# EXHIBIT A

*************************************************************

STATE OF ILLINOIS    )
                     )   SS.
COUNTY OF COOK )

The NOVEMBER, 2005 Grand Jury of the
Circuit Court of Cook County.

The Grand Jurors chosen, selected and sworn, in and for the
Circuit Court of Cook County, in the State of Illinois, in the name
and by the authority of the People of the State of Illinois, upon
their oaths present that on or about NOVEMBER 8, 2005 at and within
the County of Cook

JOHN GREEN

committed the offense of        POSSESSION OF A CONTROLLED SUBSTANCE

in that HE, KNOWINGLY AND UNLAWFULLY POSSESSED OTHERWISE THAN AS

AUTHORIZED IN THE ILLINOIS CONTROLLED SUBSTANCES ACT OF SAID STATE

OF ILLINOIS THEN IN FORCE AND EFFECT LESS THAN 15 GRAMS OF A

SUBSTANCE CONTAINING A CERTAIN CONTROLLED SUBSTANCE, TO WIT:

COCAINE,

IN VIOLATION OF CHAPTER 720 ACT 570 SECTION 402(c)

OF THE ILLINOIS COMPILED STATUTES 1992, AS AMENDED AND,

contrary to the Statute and against the peace and dignity of the
same People of the State of Illinois.

CHARGE ID CODE: 5101110
CASE NO. 05CR-27629
COUNT NO. 1

EXHIBIT

A

# EXHIBIT B

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS        Page 001

PEOPLE OF THE STATE OF ILLINOIS

           VS                NUMBER 05CR2762901

JOHN        GREEN

CERTIFIED STATEMENT OF CONVICTION / DISPOSITION

  I, DOROTHY BROWN, Clerk of the Circuit Court of Cook County, Illinois,
and keeper of the records and seal thereof do hereby certify that the
electronic records of the Circuit Court of Cook County show that:

The States Attorney of Cook County filed an INDICTMENT/INFORMATION
with the Clerk of the Circuit Court.

Charging the above named defendant with:

  720-570/402(c)                  F     POSS AMT CON SUB EXCEPT(A)/(D)
The following disposition(s) was/were rendered before the Honorable Judge(s):


```
12/01/05 IND/INFO-CLK OFFICE-PRES JUDGE        12/16/05 1701
         05CR2762901 ID# CR100910259
12/16/05 CASE ASSIGNED                         12/16/05 1719
         BIEBEL, PAUL JR.
12/16/05 DEFENDANT IN CUSTODY                  00/00/00
         CLAPS JOSEPH M
12/16/05 DEFENDANT IN CUSTODY                  00/00/00
         SCHREIER, JAMES M.
12/16/05 PRISONER DATA SHEET TO ISSUE          00/00/00
         SCHREIER, JAMES M.
12/16/05 CONTINUANCE BY AGREEMENT              01/13/06
         SCHREIER, JAMES M.
01/13/06 DEFENDANT IN CUSTODY                  00/00/00
         SCHREIER, JAMES M.
01/13/06 PRISONER DATA SHEET TO ISSUE          00/00/00
         SCHREIER, JAMES M.
01/13/06 CHANGE PRIORITY STATUS        R       00/00/00
         SCHREIER, JAMES M.
01/13/06 WITNESSES ORDERED TO APPEAR           00/00/00
         SCHREIER, JAMES M.
01/13/06 CONTINUANCE BY AGREEMENT              01/27/06
         SCHREIER, JAMES M.
01/27/06 MOTION TO SUPPRESS                         S      2
         SCHREIER, JAMES M.
01/27/06 MOTION TO QUASH ARREST                     S      2
         SCHREIER, JAMES M.
01/27/06 NOLLE PROSEQUI                    CALL 00/00/00
         SCHREIER, JAMES M.
01/27/06 DEF DEMAND FOR TRIAL                  00/00/00
         SCHREIER, JAMES M.
```

EXHIBIT

B

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS          Page 002

PEOPLE OF THE STATE OF ILLINOIS

                    VS                    NUMBER 05CR2762901

     JOHN        GREEN

        CERTIFIED STATEMENT OF CONVICTION / DISPOSITION

    I, DOROTHY BROWN, Clerk of the Circuit Court of Cook County, Illinois,
and keeper of the records and seal thereof do hereby certify that the
electronic records of the Circuit Court of Cook County show that:

The States Attorney of Cook County filed an INDICTMENT/INFORMATION
01/27/06 CHANGE PRIORITY STATUS          M    00/00/00
     SCHREIER, JAMES M.



                    I hereby certify that the foregoing has
                    been entered of record on the above
                    captioned case.
                    Date 12/06/07

                    _Dorothy Brown (SH)_
                     DOROTHY BROWN
CLERK OF THE CIRCUIT COURT OF COOK COUNTY

# EXHIBIT C

```
 1    STATE OF ILLINOIS   )
                          )    ss
 2    COUNTY OF C O O K   )

 3          IN THE CIRCUIT COURT OF COOK COUNTY
             COUNTY DEPARTMENT - CRIMINAL DIVISION
 4
      THE PEOPLE OF THE       )
 5    STATE OF ILLINOIS       )
                              )    Case No. 05 CR 27629
 6       vs.                  )
                              )
 7    JOHN GREEN              )

 8                  REPORT OF PROCEEDINGS

 9          BE IT REMEMBERED that on the 27th day of

10    January, 2006, this cause came on for hearing

11    before the Honorable JAMES M. SCHREIER, Judge of

12    said Court, upon the indictment herein, the

13    defendant having entered a plea of not guilty.

14          APPEARANCES:
                HON. RICHARD DEVINE,
15              State's Attorney of Cook County, by
                MS. CAREN ARMBRUST,
16              MR. GLEN RUNK,   (7-11)
                Assistant State's Attorneys,
17              Appeared on behalf of the People;

18              HON. EDWIN BURNETTE,
                Public Defender of Cook County, By:
19              MS. CRYSTAL CARBELLOS,
                Assistant Public Defender,
20              appeared on behalf of the Defendant.

21

22

      Kenneth Madoch
23    Official Court Reporter
      Circuit Court of Cook County
24    County Department-Criminal Division
```

EXHIBIT

C

1          THE CLERK: John Green, sheet 10.  John

2    Green.

3          THE COURT: Mr. Green, have a seat at the

4    table.  This is a motion to quash and suppress.

5    Your 7-11 is going to handle this.  State your

6    name for the record.

7          MR. RUNK:  Glen Runk, R-u-n-k.

8          THE COURT:  7-11 where.

9          MR. RUNK: DePaul University, working under

10   the supervision of Caren Armbrust.

11         MS. ARMBRUST: And Paul Chevlin.

12         MR. RUNK: And Paul Chevlin.

13         THE COURT:  Crystal, call your first

14   witness.

15         MS. CARBELLOS: John Green.

16         THE COURT:  Let the record show also a

17   couple of inventory sheets, Mr. Chevlin, for you

18   to share with Miss Carbellos.

19              (Witness sworn.)

20              JOHN GREEN,

21   called as a witness on behalf of the People of

22   the State of Illinois, having been first duly

23   sworn, was examined and testified as follows:

24              DIRECT EXAMINATION

1                          BY

2                    MS. CARBELLOS:

3        Q   Keep your voice up and speak slowly and

4   clearly so the Court Reporter can record

5   everything.   State your name?

6        A   John Henry Green Junior, Ma'am.

7        Q   You live in Chicago?

8        A   Yes, Ma'am.

9        Q   On November 8, 2005, did you live in

10  Chicago?

11       A   Yes, Ma'am.

12       Q   Where were you living on November 8th,

13  two thousand   --

14       A   10345 South Union.

15       Q   On November 8, 2005, approximately 11

16  o'clock that night, where were you?

17       A   I was walking west on 105 Street.

18       Q   Where were you coming from?

19       A   105th and Eggleston.

20       Q   What had you been doing on 105th and

21  Eggleston?

22       A   I own a carpet cleaner and I was

23  talking to a guy about trying to get some

24  customers to clean carpets over there.

1       Q  After you left that address and walking

2  west on 105th, where were you headed?

3       A  Home.

4       Q  How far from your home?

5       A  About 3 blocks west -- I mean east and

6  about half a block, a block and a half north.

7       Q  At approximately 105th and Normal, did

8  anything unusual happen?

9       A  Yes, Ma'am.

10       Q  What was -- what happened?

11       A  As I was approaching 105th and Normal,

12  an unmarked squadcar pulled over, stopped me,

13  told me to put my hands on the car.

14       Q  Stop right there.  The squadcar was an

15  unmarked car?

16       A  Yes, Ma'am.

17       Q  Were the officers in uniform or were

18  they in plain clothes?

19       A  Plain clothes, Ma'am.

20       Q  And what happened when they stopped

21  their car?

22       A  One of them told me to put my hands on

23  the car.  He started searching me.

24       Q  After he told you to put your hands on

1    the car, did you do that?

2         A   Yes, Ma'am.

3         Q   After you put your hands on the car,

4    what did that officer do?

5         A   He started going in my pockets, Ma'am.

6         Q   Which pockets did he go in?

7         A   My pants pockets first and then he

8    unzipped my jacket and went inside my jacket

9    pockets.

10        Q   When he unzipped your pocket and went

11   into your jacket pockets did he find anything?

12        A   Yes, Ma'am.

13        Q   What did he find?

14        A   He found a package of cocaine.

15        Q   When that officer first approached you,

16   were you at that time, had you committed any

17   crimes?

18        A   No, Ma'am.

19        Q   When he approached you did he ask your

20   name?

21        A   No, Ma'am.

22        Q   Did he ask your address?

23        A   No, Ma'am.

24        Q   Did he ask you what you were doing in

1    that neighborhood?

2         A   No, Ma'am.

3         Q   After he approached you, how far from

4    you was he when you realized it was a police

5    officer?

6         A   It was right up on me.

7         Q   What do you mean, how many feet away?

8         A   He pulled over from -- he's driving

9    west on 105 Street.  He pulled over to the side

10   of the street that I'm on and he got out the

11   car.  That's when I knew he was the police.

12        Q   Did you see the car pull over?

13        A   Yes, Ma'am.

14        Q   You noticed the car at first?

15        A   Yes, Ma'am.

16        Q   Did you know that was an unmarked

17   squadcar when you first saw it?

18        A   Yes, Ma'am.

19        Q   Did this officer hesitate before he

20   jumped out of the car?

21        A   No, Ma'am.

22        Q   Did he put his hands on you?

23        A   Yes, Ma'am.

24        Q   Right away. When that officer was

```
 1    coming towards you, you were able to see him?

 2         A  Yes, Ma'am.

 3         Q  Did you take this little bag of cocaine

 4    and throw it down on the ground?

 5         A  No, Ma'am.

 6         THE COURT:  Where did you have it.

 7         A  It was in my inside jacket pocket, sir.

 8         MS. CARBELLOS:.

 9         Q  Now, Mr. Green, you have a conviction

10    in 2005, is that right?

11         A  Yes, Ma'am.

12         Q  What was that conviction for?

13         A  Possession.

14         Q  Of a controlled substance?

15         A  Yes, Ma'am.

16         Q  And you have a very very old case that

17    you were released in '98, convicted in '82?

18         A  Yes.

19         Q  What was that case for?

20         A  Murder, murder conviction, Ma'am.

21         Q  When the officer jumped out of the car,

22    did he show you any kind of a search warrant or

23    arrest warrant?

24         A  No, Ma'am.
```

7

1          Q   Did you have any I.D. on you?

2          A   Yes, he took my wallet out of my

3     pocket, yes, Ma'am, that's how he got my name.

4          Q   He did ask your permission if he could

5     search you?

6          A   No, Ma'am.

7          MS. CARBELLOS: That's all, Judge.

8          THE COURT:  Cross examine.

9                    CROSS EXAMINATION

10                        BY

11                   MR. RUNK:

12         Q   Mr. Green, what was it you were doing

13    at Eggleston and 105th?

14         A   I was coming from a friend's house at

15    105th and Eggleston.

16         Q   But you were doing carpet cleaning?

17         A   I own a carpet cleaner.  The holiday

18    was coming in, we had done it the year before

19    and I was, we were having a little meeting about

20    it.

21         Q   At 11 o'clock at night?

22         A   Yes, I have a day job, he has a day

23    job.  He worked from 3:00 to 10:00.  And I work,

24    I work from 8:00 to 4:30 and that was the only

1    time I could get with him that night.

2         THE COURT:  Where were you working.

3         A   I was working at Loyola University,

4    food service.

5         MR. RUNK:

6         Q   You were walking west down 105th when

7    the unmarked squadcar pulled up?

8         A   Yes.

9         Q   How many officers were there?

10        A   2, sir.

11        Q   And do you know the race of the

12   officers?

13        A   They were Caucasian, sir.

14        Q   And did you -- did you know these

15   officers before November 8th?

16        A   No, sir.

17        Q   Had you ever seen these officers?

18        A   No.

19        Q   But yet these officers picked you out

20   of the street?

21        MS. CARBELLOS: Objection, argumentative.

22        THE COURT:  Overruled, he may answer.

23        A   Yes, sir.

24        MR. RUNK:

9

1        Q   And was that before they got out of the

2   car, they ordered you to put your hands on the

3   car, is that what you're saying?

4        A   He got out of the car and asked me --

5   told me to put my hands on the car, sir.

6        Q   And did they say anything else to you

7   before they approached you?

8        A   No.

9        Q   They immediately started digging in

10  your pockets?

11       A   One, he did.

12       Q   Was that the driver or the passenger?

13       A   The driver I believe, sir.

14       Q   And you said upon the search, he found

15  a bag of cocaine?

16       A   Yes, sir.

17       Q   And it was in your jacket pocket?

18       A   Yes, sir, inside jacket pocket.

19       Q   Had you used that cocaine earlier that

20  day?

21       A   No, sir.

22       Q   When was the last time prior to that?

23       A   It had been a while.

24       MR. RUNK: Nothing further.

1      THE COURT:  Step down.

2                      (Witness excused.)

3      THE COURT: Petitioner rest?

4      MS. CARBELLOS: Yes.

5      THE COURT:  State, call your officer.

6              Officer step up, raise your right

7   hand.

8                      (Witness sworn.)

9      THE CLERK:  You maybe seated.

10             DAVID DUCAR,

11   called as a witness on behalf of the People of

12   the State of Illinois, having been first duly

13   sworn, was examined and testified as follows:

14                 DIRECT EXAMINATION

15                      BY

16               MR. RUNK:

17     Q  Officer, could you please state your

18   name, first and last name for the record spell

19   your last name?

20     A  Officer David Ducar, D-u-c-a-r, star

21   4143, 22nd District, Chicago Police Department.

22     Q  Officer, do you recall what unit are

23   you assigned?

24     A  The 22nd District.

1       Q   And what is that unit?

2       A   The Chicago Police Department.

3       Q   And were you assigned to that unit on

4   November 8, 2005?

5       A   Yes.

6       Q   On November 8, 2005 around 11 PM at

7   night, where were you at?

8       A   In the area of 105th and Normal.

9       Q   And what were you doing in the area?

10      A   Routine patrol.

11      Q   Were you alone?

12      A   With a partner.

13      Q   Who was your partner?

14      A   John Kurnat, K-u-r-n-a-t.

15      Q   Were you in a marked squadcar?

16      A   Unmarked.

17      Q   And were you in uniform?

18      A   Civilian clothes.

19      Q   What if anything did you observe

20  shortly after 11 PM in that area?

21      A   I observed Mr. Green loitering in the

22  area.

23      Q   You said Mr. Green. You saw an

24  individual around 11 o'clock?

1         A   Yes.

2         Q   Do you see that individual here in

3    Court today?

4         A   Yes, I do.

5         Q   Would you please point to him and

6    describe an article of clothing he's wearing?

7         A   The subject sitting at the table with

8    the D.O.C. uniform.

9         MR. RUNK: May the record reflect an in

10   Court identification of the defendant?

11        THE COURT:   Yes.

12        MR. RUNK:

13        Q   Where did you see the defendant?

14        A   I first observed him walking southbound

15   on Eggleston approaching 105th Street.

16        Q   And what did you and your partner do?

17        A   We rode around the area for a couple

18   minutes and came back to the corner of 105th and

19   Normal.

20        Q   And what did you see there?

21        A   I observed Mr. Green walking westbound

22   on 105th Street.

23        Q   How far had he gone since you had seen

24   him the first time a few minutes prior?

1          A   Half a block.

2          Q   What did you do?

3          A   Approached him for a field interview.

4          Q   When you say approach him, did you

5    drive up by him or did you --

6          A   Approached him in the vehicle, yes.

7          Q   You said he was walking, he was walking

8    west on 105th?

9          A   That's correct.

10         Q   And were you the driver of the vehicle?

11         A   Yes.

12         Q   And when you pulled up, how close did

13   you pull up to him?

14         A   From the curb to the sidewalk.

15         Q   And what is the lighting like right

16   there in that particular area?

17         A   Street lights, artificial lights.

18         Q   Was it difficult to see?

19         A   Pardon me?

20         Q   Is it difficult to see?

21         A   No.

22         Q   What did you observe the defendant do

23   when you pulled up?

24         A   He looked in our direction of the

1    vehicle and dropped an object to the ground and

2    continued walking.

3         Q   Approximately how far away from you was

4    he when he dropped the article, the item?

5         A   Within 10 feet.

6         Q   What did you do upon seeing that?

7         A   I exited my vehicle and recovered the

8    object.

9         Q   What did your partner do?

10        A   He exited the vehicle.

11        Q   When you recovered the item, what would

12   you describe it as?

13        A   It was a clear plastic bag containing a

14   white rock like substance suspect cocaine.

15        Q   And then what did you and your partner

16   do?

17        A   Placed Mr. Green under arrest.

18        MR. RUNK: Nothing further.

19        THE COURT:  Cross.

20        MS. CARBELLOS: Thank you, Judge.

21             CROSS EXAMINATION

22                  BY

23        MS. CARBELLOS:

24        Q   Why were you going to conduct a field

1    interview on Mr. Green?

2         A   The area is a high narcotics area,

3    sales.  He was loitering in the area.

4         Q   Loitering?

5         THE COURT:   Officer, is loitering walking

6    down the street?

7         A   Well, --

8         THE COURT:   The next question.

9         MS. CARBELLOS:

10        Q   Now, this is 11 PM, is that right?

11        A   That's correct.

12        Q   There was no one else out on the street

13   but Mr. Green walking down the street?

14        A   There was a few people on the 105

15   hundred block of Normal, or correction,

16   Eggleston.

17        Q   And you saw him twice walking down the

18   street, is that right?

19        A   That's correct.

20        Q   And neither time when you saw him, he

21   wasn't committing any crimes while you were

22   looking, was he?

23        A   No.

24        Q   You didn't have any investigative alert

1    that Mr. John Green had committed a crime, did

2    you?

3        A  No.

4        Q  You had no other information that he

5    was about to commit a crime, did you?

6        A  No.

7        Q  You did not have an arrest warrant?

8        A  No.

9        Q  Search warrant?

10        A  No.

11        Q  And 11 o'clock PM it is dark outside?

12        A  That's correct.

13        Q  And as you got out of your car, it's

14    your testimony that he just kept walking?

15        A  That's correct.

16        Q  And from 10 feet away you could see

17    something drop out of his hands?

18        A  His right hand.

19        Q  Was his left side or right side facing

20    you?

21        A  Right side.

22        Q  And how long did it take you to walk 10

23    feet to the point where you say he dropped

24    something?

1          A   A couple seconds.

2          Q   You couldn't see what it was when he

3     dropped it, could you?

4          A   It was a small object.   No.

5          Q   You had no idea what it looked like,

6     did you, before you got to it?

7          A   It was a small object.

8          Q   He kept walking?

9          A   Yes.

10          Q   He didn't run?

11          A   No.

12          Q   How far did he get?

13          A   4 or 5 steps.

14          Q   What did you do after you bent down and

15     recovered the item from the ground?

16          A   Placed him under arrest.

17          Q   How did you do that?

18          A   Told him to stop and he stopped and we

19     placed him under arrest.

20          Q   You told him to stop and he just

21     stopped, is that what you said?

22          A   Right.

23          Q   He turned around?

24          A   Well, as we're walking up to him, yes.

1        Q   At what point did you search his

2   person?

3        A   After he was placed under arrest.

4        Q   When you say placed under arrest, you

5   placed handcuffs on him immediately?

6        A   Yes.

7        Q   And where did you search on his person?

8        A   On the street.

9        Q   Did you search his pants pockets?

10       A   Yes.

11       Q   You didn't recover anything, did you?

12       A   No.

13       Q   Did you search his jacket?

14       A   Yes.

15       Q   And that's when you recovered the dirt

16   from -- dope from, is that right?

17       A   No.

18       Q   Did you ever ask his name?

19       A   Yes.

20       Q   At what point?

21       A   I don't recall. Either on the street or

22   in the station.

23       THE COURT:  Any further questions?

24       MS. CARBELLOS: No, nothing.

1      THE COURT:  Thank you officer, you may

2  step down.

3                      (Witness excused.)

4      THE COURT:  Both sides rest on the motion?

5      MS. CARBELLOS: Yes.

6      MR. RUNK: Yes.

7      THE COURT: State, your argument.

8      MR. RUNK: The officer in this case when he

9  approached, approached the defendant, pulled up

10  in the car and he testified credibly that he saw

11  the defendant drop an item prior to even exiting

12  the vehicle.  So, he was not detained, he had

13  the right to approach any citizen on the street.

14  At that point he was able to stop him.  And the

15  defendant is not credible as he testified to his

16  prior criminal history.

17      THE COURT:  Thank you.  I'm not sure what

18  happened, and therefore, it goes to the defense.

19  Can't say the defendant's right to be secure on

20  his person were not violated.  Motion to

21  suppress sustained. Nolle?

22      MS. ARMBRUST: Yes.

23      MS. CARBELLOS: Defendant demands trial.

24      THE COURT:  Nolle pros.  Next case.

1          (Which were all of the

2      proceedings had at the hearing

3      of the above-entitled cause.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

```
1    STATE OF ILLINOIS   )
                         )
2    COUNTY OF C O O K   )

3


4         THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
              COUNTY DEPARTMENT - CRIMINAL DIVISION
5


6                        I, Kenneth Madoch, Official
     Shorthand Reporter of the Circuit Court of Cook
7    County, County Department-Criminal Division, do
     hereby certify that I reported in shorthand the
8    proceedings had at the hearing in the
     above-entitled cause; and that I thereafter
9    caused to be transcribed into typewriting the
     foregoing transcript, which I certify is a true
10   and correct transcript of said proceedings.

11


12
     _____
13   Official Shorthand Reporter
     Circuit Court of Cook County
14

15

16

17   Dated this 14th day of December, 2007.

18

19

20

21

22

23

24
```

# EXHIBIT D

SHEET No.

__10__

LINE No.

__1.__

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
CRIMINAL DIVISION / MUNICIPAL DEPARTMENT-DISTRICT————

PEOPLE OF THE STATE OF ILLINOIS

v.

GREEN, JOHN

No. ___05CR2762901___

SID ___022167280___

IR ___0590933___

ADDENDUM TO PREVIOUS ORDER SETTING BAIL AND COMMITTING THE DEFENDANT TO THE COOK COUNTY DEPARTMENT OF CORRECTIONS FOR FAILURE TO DEPOSIT BAIL.

## ORDER

THIS MATTER COMING BEFORE THE COURT AND THE COURT BEING FULLY ADVISED IN THE PREMISES, IT IS HEREBY ORDERED:

*M/s Nolle Prosse*

*discharged this*

*case only*

ENTERED
JUDGE JAMES SCHREIER-0458
JAN 27 2006
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

DISPOSITION(S) MUST REFLECT WHICH COUNT(S) THE ORDER(S) IS/ARE APPLICABLE TO.

ENTERED:

DATED: ___JANUARY  27  2006___          JAMES M. SCHREIER
                                          Judge                    Judge's No.

DEPUTY CLERK ___Mannerino___             ROOM/BRANCH ___704___

PAGE __1__ OF __1__ PAGES              at __9:30 AM__ a.m. / p.m.

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY**

EXHIBIT
D